## In re WELLS.

### (District Court, W. D. Missouri, C. D.    February 24, 1902.)

1. BANKRUPTCY—JURISDICTION OF COURT OF BANKRUPTCY—PROPERTY CLAIMED BY THIRD PERSONS.

   The filing of a petition in involuntary bankruptcy does not of itself vest the court of bankruptcy with jurisdiction over all property then in the possession of the bankrupt, whether owned by him or not, to the exclusion of the jurisdiction of a state court to try the title to such property.

2. SAME—ENJOINING SUIT IN STATE COURT—PRIORITY OF JURISDICTION.

   On the day following the filing of a petition in involuntary bankruptcy against a debtor, and before any action had been taken by the court, a corporation commenced an action in replevin in a state court to recover property of which it claimed to be the owner, but which was in the possession of the bankrupt, and such property was taken under the writ of replevin. Subsequently the court of bankruptcy appointed a receiver, made an adjudication, and appointed a trustee. *Held*, that it did not acquire jurisdiction over the property which had been taken on the writ of replevin, and which was never in its possession, and was not authorized to enjoin the further prosecution of the action in the state court, and compel the plaintiff therein to submit its claims to its own jurisdiction.

In Bankruptcy. On bill by the trustee for an injunction to restrain further proceedings in an action in a state court.

Willard P. Hall, for trustees.

James S. Botsford and Sangree & Lamm, for McFarland Carriage Company.

McPHERSON, District Judge. The petition by creditors was filed in this court on the 8th day of November, 1900, against Charles B. Wells, in involuntary bankruptcy proceedings. An injunction, warrant, or process was not asked for. Wells was adjudicated a bankrupt on the 26th day of November, 1900, on the confession of his, filed November 8, 1900, that he had committed the act of bankruptcy charged. November 10, 1900, a receiver was appointed by the referee. On the same day (November 8, 1900) that the proceedings in bankruptcy were instituted, the McFarland Carriage Company prepared a petition in replevin against Wells to recover certain personal property in his possession, but which, as alleged, belonged to the carriage company. The petition in replevin was filed in the circuit court of Pettis county on the following day (November 9, 1900), and on that day the writ of replevin was issued, and on that day served, and on that day the property in question was reduced to the physical possession of the state court. To restate the case, after the petition in bankruptcy was filed, but before the receiver was appointed, and before the adjudication of bankruptcy, the state court took possession of the property now in controversy. The trustee, by direction of the referee, appeared in the state court, and asked leave (which was granted) to defend against the action in replevin. He filed his answer therein a year or more ago. The trustee now files in this court his bill in equity, asking that the carriage company, by writ of injunction, be enjoined from the further prosecution of the replevin action in the state court, and that the carriage company be commanded to deliver possession of the property

taken under the writ of replevin, over to the trustee, and, if the property cannot be delivered, that the carriage company be required to account to the trustee for the value thereof. The question, therefore, is, does the filing in this court of a petitioner in involuntary bankruptcy, of itself, and before any order is made by this court, give this court jurisdiction of all the property then in the possession of the bankrupt, whether by him owned or not? And if the bankrupt then has possession of the property, but not owned by him, or the question of ownership is disputed, must the claimant have the question of ownership adjudicated by this court, and to the exclusion of the state court, which has taken possession of the property for adjudication?

All agree that the court, state or federal, which first takes possession of the property, retains the possession and the jurisdiction. This is elementary, and cases need not be cited to emphasize the proposition. But the trustee, by counsel, argues that the "possession" does not mean physical possession. This court, by any of its officers, never has had physical possession of the property. And the decision of this question requires a construction of the bankrupt statute of 1898. Counsel for the trustee insists that the mere filing of the petition in involuntary bankruptcy is notice to the world, and no other court must interfere with any property then in the possession of the bankrupt, and that any subsequent interference by a state court is avoided and nullified by the subsequent adjudication of bankruptcy of the debtor. I decline to so hold, and for reasons which seem to me conclusive. Conflicts between courts over the same property should at all times be avoided, if possible, because at times such conflicts are unseemly. The mistake is constantly being repeated, and sometimes by lawyers, by asserting that the United States courts are greater and more commanding than the state courts. I cannot agree to this. The state courts are courts of general jurisdiction, while a federal court is one of limited jurisdiction. Of course, when a federal court once acquires jurisdiction, then such jurisdiction becomes complete. And it is true that on some questions the federal courts have exclusive jurisdiction,— such as in admiralty and other cases. Under some of the old bankruptcy statutes such has been the case. But it is not so under the act of 1898. But little is gained by reviewing the decisions of the different state supreme courts or of the federal trial courts. Such decisions are not binding on this court, and are in conflict, and cannot be reconciled. And no great headway is made by reviewing the dicta of the writers of opinions of the cases in the supreme court. But light has been given us by six cases decided by the supreme court: Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1,000, 44 L. Ed. 1175. That case was a thoroughly considered one. The object sought in that case was, in one respect, just the same as in the case at bar, viz., the trustee wanted to reduce to physical possession property which was not in his hands, but to which, as he alleged, he was entitled. And the supreme court held that the trustee must litigate the matter in a state court; which state court would have exclusive jurisdiction unless the adversary to the trustee would consent to come into the federal court. The language of the opinion in that case has been criticised, but the holding of the court in that case stands. Mitchell v. McClure, 178 U. S. 539, 20

Sup. Ct. 1000, 44 L. Ed. 1182; Hicks v. Knost, 178 U. S. 541, 20 Sup. Ct. 1006, 44 L. Ed. 1183. These two cases follow the Bardes decision. In White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, the supreme court held that property in the possession of the bankrupt when he was adjudicated a bankrupt, and subsequently seized by replevin proceedings in a state court, could be recovered by a proceeding in the federal court. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, shows this state of facts: The debtor made an assignment for the benefit of creditors. Then proceedings in bankruptcy were brought. After the filing of the petition in bankruptcy, the assignee in the state insolvent law proceedings sold some of the debtor's property. Subsequently, the adjudication in bankruptcy. Still later, proceedings were instituted in the federal court to recover the property thus sold. And the purchaser appeared in the federal court, and asserted his claim to the property, and it was held that the property belonged to the estate in bankruptcy. It will be observed that the purchaser surrendered himself, without protest, to the jurisdiction of the federal court. That this is what gave the federal court jurisdiction is apparent from the case, and is specifically stated in a paragraph on page 197, 181 U. S., and page 560, 21 Sup. Ct., 25 L. Ed. 814. Of course, the federal court in such a case has jurisdiction, and would have in the case at bar if the carriage company would consent. But it protests. Mueller v. Nugent, 22 Sup. Ct. 269, 46 L. Ed. ——, was a case where the agent of the bankrupt had the property. He sold the property as the agent of the bankrupt, and did not hold it adversely to the bankrupt. And what the supreme court held was that where property passed into the hands of a party as agent of the debtor, even before the petition in bankruptcy was filed, the federal district court could, by orders and contempt proceedings, coerce the surrender of such property to the trustee in bankruptcy. And this is emphasized by the record, wherein it is shown that after the case had been tried, and was about being decided, the claimant wanted to change his pleadings, and allege that, instead of holding the property as agent of the debtor, he held it adversely, and this was denied. And I have no doubt but that it was denied because, if he were an agent of the debtor, the court had jurisdiction, but if he held it adversely the court did not have jurisdiction, although this is my notion only. The foregoing is what has been held by the supreme court. And all of these holdings are consistent one with another, and inconsistent, in my judgment, with the contentions of the trustee in the case at bar.

But as an independent question, without these holdings of the supreme court, I would regard it my duty to deny the injunction herein. The act of 1867 carried with it many evils, real or supposed. One of such evils was its oppressive and expensive features. The estates were eaten up by a most vicious fee system. The litigation was all, or practically all, in the federal courts, generally sitting at a great distance from the debtor, the claimants, and the witnesses. It was the purpose of the present statute to correct this, and limit the fees and expenses, and have the greater part of the litigation where the parties resided. Under the former statute, the title to all property passed upon the mere filing of the petition. The judiciary committee of the house,

in reporting the bill which became the present statute, called attention to this evil, and said that it was corrected by passing the title as of the date of adjudication. And such is the language of the statute. And if this is not so, see what we have: A petition is filed. The debtor can, and often does, deny the commission of the alleged act of bankruptcy. He can demand a trial by jury, and perhaps never be adjudicated a bankrupt. This takes months. The petitioning creditors can obtain an injunction and keep the property intact. But in this case the creditors kept quiet and avoided such expense and liability. Now in the meantime can it be possible that nothing can be done by the debtor or by any other court?

The writ of injunction is denied.