## GOOCH v. STONE.

### In re SMITH et al.

(Circuit Court of Appeals, Sixth Circuit. March 12, 1919.)

No. 3194.

1. BANKRUPTCY ⟨⟩166(3)—PREFERENCE—KNOWLEDGE OF INSOLVENCY.

A creditor of one member of bankrupt partnership, which was hopelessly insolvent, who received from his debtor in partial payment of notes not due merchandise bought to his knowledge entirely on credit of the firm, and who also had intimate knowledge of its affairs, *held* to have such knowledge of its insolvency as rendered the payment a voidable preference.

2. BANKRUPTCY ⟨⟩293(2)—SUIT BY TRUSTEE—EQUITY JURISDICTION.

With defendant's consent a bill in equity by a trustee to recover a preference may be entertained by a District Court.

Appeal from the District Court of the United States for the Western District of Tennessee.

Suit in equity by W. H. Stone, trustee in bankruptcy of I. C. Crow and O. W. Smith or Crow & Smith, against J. R. Gooch. Decree for complainant, and defendant appeals. Affirmed.

Frank S. Elgin, of Memphis, Tenn., for appellant.
T. B. Whitehurst, of Selmer, Tenn., for appellee.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARRINGTON and DENISON, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge. In October, 1912, the appellant, J. R. Gooch, sold to parties in Birmingham, Ala., a general store owned by him for some time at Gravel Hill, Tenn. At that time, and for nearly two years theretofore, one of the bankrupts (Smith) had clerked for Gooch in this store at a salary from $25 to $35 per month. Smith continued in the employ of the purchaser of Gooch's store until the merchandise was moved to Birmingham in the early summer of 1913. Soon thereafter Smith began business for himself at Gravel Hill, at the same time buying from Gooch 38 acres of land with a frame store building thereon and other improvements. He bought this land altogether on credit, executing long-time notes for the payment, involving him in an indebtedness of over $3,000 for the purchase; Gooch retaining title to the property until the consideration was paid. Shortly after the Gooch stock had been removed to Birmingham, a portion of it was returned to Gravel Hill by one Dunker, who bought the old Gooch brick store building from Gooch's vendee. This real estate was bought by Dunker entirely on credit, a trust deed upon the goods and store real estate being given as security. The trust was foreclosed in the summer of 1914 and bought at public sale by Gooch. At this time, Smith, in addition to his debts to many other parties, owed Gooch about $600, unsecured, besides the debt on the land, and $800 to a bank on which Gooch was security.

In July, 1914, Crow, the other bankrupt, went into partnership with Smith at the suggestion of Gooch. Crow seems to have contributed no money, but expected to put in $1,000 in the fall. His connection with Smith lasted but a month, during which time the firm of Crow & Smith bought of Gooch the Dunker store and brick building on credit for $6,746.47. The Dunker stock of goods, which had been bought by Gooch at the sum of $250, to which had been added about $200 of new goods, was figured into this trade for more than $1,600. The circumstances show that the valuation of $6,715.41 for the Dunker assets, real and personal, even figured on what the parties called a credit basis (that is, adding to the assumed present value the interest on the deferred payments), was very much exaggerated. Gooch retained title to the property sold by him to Crow & Smith, pending the payment of the consideration notes, and, in addition, required and received personal security on the note first due which was in the sum of $1,646. This note he sold before maturity to a relative. Crow retiring in August, 1914, Smith struggled along with the business until September, when he made an assignment which was followed by involuntary bankruptcy, the adjudication occurring October 24, 1914. His liabilities were about $18,000; the unsecured claims amounting to $8,711. His assets consisted of the two parcels of real estate, bought from Gooch, the title to each of which still remained in Gooch to secure the purchase money, and upon which Gooch's claims were for a greater amount than their real values, and personal property scheduled at $6,509.33, which includes the matter involved in this con-

troversy as having been received by Gooch as a preference. Gooch proved an unsecured claim of $2,250, in which was included the item of $1,650 for the Dunker stock of goods, and two secured claims of $5,068.74 and $2,500.88, being the aggregate amounts of the several sale notes held by Gooch for the purchase by contract of the two parcels of real estate, respectively. The second secured claim was reached in its amount ($2,500.88) by crediting the alleged preference which is the subject of this action. Gooch's claim for $5,068.74 was made up from the notes of the Dunker purchase left in his hands after the sale of that first due. The personal property scheduled consisted of the merchandise at a great overvaluation.

Two or three days after the partnership was formed, Smith met Gooch in Memphis. Together they went to the Memphis Furniture Manufacturing Company's place of business, where, upon a property statement, Smith bought a bill of furniture aggregating $964 on the credit of the partnership, all without the knowledge or authority of Crow. Of this bill of furniture, Smith permitted Gooch to take items amounting to $623.32, shipping these goods to Birmingham, to which place Gooch had removed. The consideration for this transaction was the liquidation of the first note due from Smith to Gooch, given for the purchase of the 38 acres of land and a credit of $127 on the second note of that series; neither of said notes having matured. Later in 1914 proceedings in bankruptcy were begun against the partnership.

The trustee in bankruptcy began an action in the District Court to recover $623.32 from Gooch, being the value of the furniture so purchased, on the ground of preference, and from the decree of that court against Gooch, the latter appeals.

[1] Appellant first contends that the record does not disclose his knowledge, or reasonable notice to him, of the insolvency either of Smith or of Crow & Smith at the time he received the furniture. There is no possible question but that the transaction resulting in the acquisition of the furniture by Gooch was a preference to him to the amount of $623. It is equally clear—there is no room for dispute—that Smith and the partnership were each hopelessly insolvent at the time of this transaction. What is there to show notice to Gooch of the fact of insolvency? In the first place, the largest elements contributing to either insolvency—and these alone were enough to compel such a result—were the transactions whereby Gooch became creditor to Smith and to the firm in amounts greatly in excess of the values of the assets acquired by the bankrupts in consideration for the respective items of indebtedness. Secondly, Gooch is shown to have been not only the intimate of Smith, but his close adviser in business matters. In this capacity, and in the relationship which they had theretofore sustained to each other as employer and employé, and then as surety and principal on the bank note, and as creditor and debtor for money loaned without security and on open account, to assume that Gooch did not have somewhat intimate acquaintance with Smith's affairs is to classify the appellant as an abnormally trusting, credulous, and disinquisitive individual. Again, the proof shows that it was a

matter of notoriety in the little community that Smith and the firm each were beyond their depth financially. In addition, testimony exists in the record, in some particulars sought to be impeached, of statements by Gooch to the effect that he knew that Smith was insolvent, that Crow contributed nothing which assisted the partnership to solvency, and that Smith was a careless and impossible business man.

The court below heard and apparently credited this direct testimony. These matters alone seem to compel the conclusion that Gooch knew or had reason to know at the time of the furniture deal that he was receiving a preference from an insolvent. If anything else were necessary to make the decision of the fact certain against appellant, it would be the nature of the transaction itself. It taxes credulity to be asked to believe that Gooch took two-thirds of the bill of furniture, purchased entirely on credit and charged to the partnership, and applied it to the liquidation, pro tanto, of a debt owing him by a partner before the debt matured, all in good faith with the creditors either of Smith or of the firm of Crow & Smith. Having done this while in possession of all the facts concerning the business of either of the bankrupts, which Gooch in his testimony is willing to admit he possesses, and as we are advised by the whole record, we find no difficulty in resolving the question of the fact of notice against appellant. We may do this without reference, even, to the general rule that when, as here, findings of a master, concurred in by the court below, are in review, they are presumed to have been correct in the absence of error or mistake appearing on the record. Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764.

[2] At the time of the beginning of the suit the defendant appellant lived beyond the jurisdiction of the court. The petition was filed May 25, 1915. June 15 the defendant answered, "waiving all right to object to the petition or declaration or bill or whatever the pleading may be termed by which he is called upon to defend and going to the merits at once." The issues being made up, the court referred the matter to a master to take proof and report findings. To reference there was no objection. Upon the coming in of the master's report adverse to appellant, counsel for the parties joined in a stipulation for the hearing of exceptions at Memphis. The exceptions raised no issue of jurisdiction whatever. Hearing them, the court sua sponte dismissed the case on the theory, among others, that this was an action at law, not cognizable in equity, upon the authority of Warmath v. O'Daniel (C. C. A. 6th Cir.) 159 Fed. 87, 86 C. C. A. 277, 16 L. R. A. (N. S.) 414. On rehearing, it was suggested to the court that the objection to the jurisdiction, on the ground that the action lay on the law side of the court, came too late after submission, whereupon the court reheard the matter upon the merits. In this there was no error. The exact question was raised by this court on certificate to the Supreme Court where it was held that, by defendant's consent, a bill in equity by trustee in bankruptcy to recover property conveyed in fraud

of the bankruptcy act might be entertained by the District Court. Hicks v. Knost, 178 U. S. 541, 20 Sup. Ct. 1006, 44 L. Ed. 1183. Recently we held in Golden Hill Distilling Co. v. Logue, 243 Fed. 342, 156 C. C. A. 122, that, since the amendment of 1910 (Act June 25, 1910, c. 412, 36 Stat. 838) the bankruptcy court has jurisdiction of a suit to recover a preference, regardless of the amount involved or the citizenship of the parties. These authorities dispose of all the appellant's objections respecting the jurisdiction of the court below.

There remains but one other question: On the motion of the trustee there were brought into the record, on the hearing of the exceptions, the two bankruptcy records. There was proof satisfactory to the court below that the parties used these records before the master and that it was orally stipulated that the same might be used for all pertinent purposes in the hearing upon the exceptions. We find no prejudicial error in the disposition of this matter below. These considerations dispose of this case.

The decree and order of the court below, that the trustee have and recover of the defendant, J. R. Gooch, the sum of $735.14, with all costs of the case, with execution, were proper, and are affirmed.